DEBORAH M. SMITH
Acting United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov

Attorney for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:06-cr-00024 (RRB-TWH) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S** |
| vs. | ) | **OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| TEFFIN C. GOSS, II, | ) | **SUPPRESS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Plaintiff, the United States of America, and the Defendant's

Motion to Suppress.

I.    **INTRODUCTION**

The initial traffic stop that led to the discovery of crack cocaine and the

Defendant's arrest was proper because the Defendant admittedly failed to stop for

U.S. v. Goss II                                    4:06-cr-00024-RRB-TWH

a red light.  The limited detention of the Defendant was supported by reasonable

suspicion that the Defendant was involved in illegal drug activity, and his

conditional consent, with which the officers complied, was voluntary.  The

observations of the officers, when combined with the strong alert by certified,

reliable drug dog, provided sufficient probable cause for the officers to search the

vehicle under the automobile exception to the Fourth Amendment's warrant

requirement.

II.    **FACTS**

On April 15, 2006, at approximately 11:10 pm, Officer Keeler of the

University of Alaska Fairbanks (UAF) Police, observed a late model Toyota

Camry fail to stop for a red light at the corner of Geist Road and Fairbanks Street

in Fairbanks, Alaska.  Officer Keeler conducted a traffic stop of the vehicle along

Geist Road.  When Officer Keeler approached the drivers side of the Camry, the

driver was using his cell phone.  The man claimed that he was busy talking on his

cell phone when he saw the light turn red.  Officer Keeler asked the driver for his

operators license, as well as the registration and insurance information for the

vehicle.  The officer then instructed the driver to pull into the adjacent Pizza Hut

parking lot.

The operators license identified the driver as the Defendant, Teffin Goss II,

with a Fairbanks address.   Instead of registration and insurance information, the

Defendant produced a rental agreement from Avis Rental Cars.  The agreement

indicated that the car was rented in Fairbanks in the name of Jennifer Silva.

Exhibit 1.  While at the passenger side of the vehicle, the officer also noted

multiple air fresheners hanging from both the drivers door and the rear view

mirror. Exhibits 2-4.  Officers would later find 7 total air fresheners in the Camry.

During the move into the adjacent parking lot, the officer asked the UAF

Police dispatcher to check the Defendant's operators license information in the

Alaska Public Safety Information Network (ASPIN).  The officer also asked the

dispatcher to check whether the Defendant had any criminal history involving

drugs.  The dispatcher informed the officer that the Defendant had a drug history,

and Officer Keeler called for back-up. The officer continued to review the

Defendant's operator's license and the rental agreement, checking facts with the

dispatcher. Once the back-up officer arrived, Officer Keeler continued gathering

the information necessary to issue a traffic citation for failure to stop at the red

light.  When the Defendant stepped out of the Camry, Officer Keeler noticed that

he was wearing an expensive-looking watch and necklaces.  This observation

became more significant when, as part of the standard questions asked for the

citation, the Defendant claimed he worked for Toyota Auto Services, but could not

remember the work phone number.

Officer Keeler then asked the Defendant for permission to search the Camry. The Defendant refused, citing a previous instance where he consented to the search of a vehicle, and was subsequently charged with possession of a weapon that was found inside. The officers complied with the Defendant's decision not to consent to the search, but asked if a canine could perform a narcotics sniff of the vehicle. The Defendant consented.

Trooper Mobley quickly arrived with the drug dog, on scene by 11:25 pm. The canine first alerted on the driver's side door of the Camry, then when Trooper Mobley let the dog into the passenger compartment, the dog strongly alerted on the center console between the front seats. In the center console was a camera bag that contained what appeared to be crack cocaine in a wet form. Trooper Mobley identified the substance as being "freshly cooked. The State of Alaska Scientific Crime Detection Laboratory identified the substance as 24.5 grams of cocaine base.

The officers stopped their search upon discovery of the drugs, and removed the vehicle to the Fairbanks Police Department garage for an additional search. Based upon a State of Alaska search warrant, the officers found numerous a traffic citation for speeding from the previous day, issued to the Defendant in Palmer.

At the police station Officer Keeler read the Defendant a <u>Miranda</u> warning.

The Defendant stated that he borrowed the Camry to get his dogs, and only had the

car for 20 minutes.  When asked for the time he borrowed the car, the Defendant

asked for an attorney and Officer Keeler stopped the questioning.  In a later

interview, the person who had rented the vehicle, Jennifer Silva, agreed that she

gave the Defendant permission to use the car, but stated that he had the car starting

from 7:00 - 8:00 pm that night, and that no one else had borrowed the car.  She

saw the Defendant briefly at 10:00 pm, and no one was with him.

III.    THE OFFICER APPROPRIATELY STOPPED THE DEFENDANT
        BASED UPON A TRAFFIC VIOLATION, AND DEVELOPED
        REASONABLE SUSPICION TO EXPAND THE TRAFFIC STOP

There is no Fourth Amendment violation for stopping a driver who has

committed a traffic violation if the officer has probable cause to believe that the

violation has occurred.  <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996).  The

scope of the investigative detention must be tailored to the underlying justification

for the stop.  <u>U.S. v. Chavez-Valenzuela</u>, 268 F.3d 719, 724 (9th Cir. 2001).

However, the officers may expand the scope of their inquiry if their suspicion is

raised by particularized objective factors.  <u>U.S. v. Diaz-Juarez</u>, 299 F.3d 1138,

1141 (9th Cir. 2002).

The basis for reasonable suspicion has been defined as "specific articulable

facts which, together with objective and reasonable inferences, form the basis for suspecting the particular person detained is engaged in criminal activity." Id. (quoting U.S. v. Rodriguez, 976 F.2d 592, 594 (9th Cir. 1992), amended by 997 F.2d 1306 (9th Cir. 1993)).

This has been shown to be a modest standard:

> The Fourth Amendment requires "some minimum level of
> objective justification" for making the stop.

U.S. v. Sokolow, 490 U.S. 1, 7 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217).

> The officer, of course, must be able to articulate something more
> than an "inchoate and unparticularized suspicion or 'hunch.'"

Id.  (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

Reasonable suspicion is certainly less demanding than probably cause, and is even "considerably less than proof of wrongdoing by a preponderance of the evidence." Id.  The Supreme Court has determined that reasonable suspicion cannot be reduced to a "neat set of legal rules." U.S. v. Arvizu, 534 U.S. 266, 274 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 695-696 (1996)).  Thus, courts making a reasonable suspicion determination must examine the totality of the circumstances in each case. Id. at 273.

To support a finding of reasonable suspicion, law enforcement officers must

have a particularized and objective basis for suspecting wrongdoing. Id. This

basis must be expressed in specific, articulable facts. Diaz-Juarez at 1141.

There seems to be no argument that Officer Keeler appropriately stopped

the Defendant for failing to stop at a red light. After receiving the Defendant's

operators license and identifying documents for the vehicle, Officer Keeler safely

moved the traffic stop out of the road and into an adjoining parking lot.

During this initial contact, Officer Keeler developed two particular,

important and articulable facts. First, that the Defendant was driving a rental

vehicle and he was not listed as an authorized driver. See, U.S. v. Perez, 37 F.3d

510, 514 (9th Cir. 1994). Moreover, the vehicle was rented in Fairbanks and the

Defendant's operator's license indicated he was a Fairbanks resident, not a tourist

or business traveler, the common users of rental cars. Second, the car had a

number of visible air fresheners, including 2 each above the driver and passenger

doors, possibly to mask the odor of drugs. See U.S. v. Quintero-Barraza, 78 F.3d

1344, 1347 (9th Cir. 1995). With this is mind, while they were moving from the

street to the parking lot, Officer Keeler ran a criminal history check on the

Defendant. The results of that check were that the Defendant had a drug offense

history. While criminal history alone cannot create reasonable suspicion, it is an

appropriate factor to consider in a totality of the circumstances analysis for

reasonable suspicion.  Burrell v. McIlroy, 423 F.3d 1121, 1124 n. 3 (9th Cir.

2005).

Armed with three particular, articulable factors that aroused his suspicion

that the Defendant might be involved in drug activity, Officer Keeler called for a

back-up officer while continuing to check the details of the operator's license and

rental car.  Once the back-up officer arrived, Office Keeler started to complete the

normal course of the traffic stop so that he could issue a citation for failing to stop

at the red light.  While asking questions related to issuing the citation, the officer

learned that the Defendant claimed to be employed by a Fairbanks business, but

could not remember the number.  However, he was wearing what appeared to be

expensive jewelry.  These four factors – a rental car in the name of a third party,

an abundance of air fresheners (including two at the driver's window), the

Defendant's criminal history involving a drug offense, and expensive looking

jewelry with a questionable indication of employment  – gave Officer Keeler

sufficient reasonable suspicion for a limited extension of the traffic stop.

Moreover, there is no time limit on an appropriate detention.  The court

should consider the circumstances of each case, based on common sense and

human experience.  U.S. v. Torres-Sanchez, 83 F.3d 1123, 1128-29 (9th Cir.

1996).  A key to this determination is the diligence exhibited by the law

enforcement officers. U.S. v. Sharpe, 470 U.S. 675, 685 (1985). If the law

enforcement officers quickly pursue a means of investigation that is likely to

confirm or dispel their suspicions, they have acted diligently and the detention is

appropriate. Id. At 686. The Supreme Court in Sharpe also recognized that law

enforcement officers are making these decisions in a dynamic environment, and

that law enforcement purposes should also be considered: "[a] court making this

assessment should take care to consider whether the police are acting in a swiftly

developing situation, and in such cases the court should not indulge in unrealistic

second guessing." Id.

In this case, Officer Keeler met the Supreme Court's requirements. Based

upon the reasonable suspicion he developed, he promptly called for backup

support, while continuing the appropriate activity necessary to issue a traffic

citation. Once the backup officer was on scene, Officer Keeler asked for consent

to search the vehicle. When the Defendant denied consent, Officer Keeler

complied, and asked for consent to search via a less intrusive means, but one that

could help to quickly confirm or dispel his suspicions, a dog search. When the

Defendant consented to use of the dog, the officers provided the dog quickly. The

dog and his handler were on scene less than 20 minutes after the initial start of the

traffic stop. The actions of the officers was diligent and timely, making the

limited extension of the detention well within the guidelines set by the courts.

The cases cited by Defendant are distinguishable on their facts.  Unlike the situation in U.S. v. Chavez-Valenzuela, 268 F. 3d 719, 716 (9th Cir. 2001), Officer Keeler had more that simple nervousness to arouse his suspicion.  Also, unlike the scenario in U.S. v. Sigmond-Ballesteros, 285 F.3d 1117, 1127 (9th Cir. 2002), the factors observed by Officer Keeler were much more than a number of driving behaviors deemed innocent by the court, possibly caused by the officers.

The four particular, articulable factors identified by Officer Keeler during the initial portion of the traffic stop provide more than the reasonable suspicion required for a limited extension of the stop and use appropriate means to uncover the hidden drugs.

IV.    THE DEFENDANT'S CONSENT TO ALLOW A DOG SEARCH OF THE
       VEHICLE WAS VOLUNTARY AND VALID

Because the traffic stop was appropriately extended, the Defendant could properly provide a voluntary consent.  Torres-Sanchez at 1129.  There was no overt coercion on the Defendant to consent, nor was the situation inherently coercive.  Perez at 515.

Overt coercion would include pressure on the Defendant to consent, or telling the Defendant the officers would get a search warrant if he refused.  Id. The

officers in this situation applied no overt coercion.  In fact, the officers

demonstrated their good faith, and showed the Defendant that his consent was

truly voluntary, when they abided by the Defendant's decision not to consent to a

full search of the car.  They simply asked if he would consent to a less intrusive

sniff search by a dog.  The Defendant clearly knew that he did not have to provide

consent because he refused consent for a direct search and the officers followed

his decision.

Moreover, the environment was not inherently coercive.  The officers did

not draw their weapons.  The Defendant was not handcuffed.  In fact, the activity

occurred in a public parking lot along the highway, a setting that discourages

coercion.  Id.  Moreover, the traffic stop was of limited duration.  The initial stop

occurred at approximately 11:10 pm, and the dog was on scene by 11:25 pm,

alerting to the car at 11:33 pm.

An examination of the appropriate factors indicate that the Defendant's

consent was voluntary.  He cannot withdraw consent after the fact simply because

the officers found evidence against him.

V.    THE DEFENDANT'S CONSENT WAS NOT TAINTED BY THE
       EXTENDED DETENTION, THUS THE CONSENT WAS VALID.

If the court determines that the detention of the Defendant was not based

upon sufficient reasonable suspicion, the consent of the Defendant can still be

deemed valid if the consent was voluntary, and was not tainted by any unlawful

activity by the police.  U.S. v. George, 883 F.2d 1407, 1415 (9th Cir. 1989).    The

voluntariness of the Defendant's consent was discussed in Section IV above.  The

courts generally turn to three factors to determine the issue of taint: "the temporal

proximity of the arrest and the confession, the presence of intervening

circumstances, ... and, particularly, the purpose and flagrancy of the official

misconduct."  Id. at 1416, quoting Brown v. Illinois, 422 U.S. 590, 603-04 (1975).

The first two factors go to the issue of whether the unlawful conduct

interfered with the defendant's free will in providing or not providing consent.  Id.

While in this instance the time of the consent was close to alleged unlawful

conduct by the police, there is a significant intervening factor that demonstrates

that the Defendant acted according to his free will.  The officers first asked for a

direct search of the vehicle.  The Defendant denied his consent and the officers

followed his wishes.  Thus, when the officers asked to conduct a less intrusive

search using a drug dog, the Defendant was fully aware that he had the option of

denying the consent, and that the officers would be faithful to his refusal.  Thus,

he demonstrated his free will with the initial denial, and by accepting his denial,

the officers demonstrated that there were no coercive or adverse consequences to

his refusal.

The last of the three Brown factors is "particularly important" because it directly applies to the rationale of the exclusionary rule, exclusion of evidence to deter police misconduct. Id. This factor has been important when police, clearly without probable cause, have arrested defendants in hopes of getting incriminating statements. Id. That is not the case in this instance. Officer Keeler only stopped the Defendant because of a clear traffic violation. The factors cited by the government in Section I, even if determined by the court to be insufficient to show reasonable suspicion, were certainly legitimate factors to raise the officer's suspicion. The officers did not draw weapons or handcuff the Defendant. Moreover, when the Defendant denied his consent for a direct search, the officers accepted his decision. The actions of the officers in this case cannot be deemed purposeful and flagrant violations of the law. U.S. v. Moreno, 280 F.3d 898, 901(8th Cir. 2002). The officers in this case acted in good faith, with particularized information, and exclusion of the evidence in this case would not support the purposes of the exclusionary rule.

Any taint on the Defendant's consent in this case can be attenuated by the strong intervening factor that the defendant denied a direct search of the vehicle and the officers accepted his refusal. In addition, the officers in this case acted on

good faith, with particularized information.  Under a totality of the circumstances

analysis using the Brown factors, the Defendant's consent was valid.

VI.    AFTER THE DOG ALERTED ON THE VEHICLE, COMBINED WITH
       THE INFORMATION ALREADY DEVELOPED DURING THE
       TRAFFIC STOP, THE OFFICERS HAD PROBABLY CAUSE TO
       SEARCH THE VEHICLE.

Officers may search an automobile so long as they have probable cause.  No

warrant is required because of the "automobile exception" to the Fourth

Amendment's warrant requirement.  U.S. v. Ibarra, 345 F.3d 711, 715 (9th Cir.

2003).  Moreover, law enforcement officers may search containers within the

vehicle if they have probable cause to search the vehicle.  California v. Acevedo,

500 U.S. 565, 580 (1991).

Probable cause can be established solely by a canine alert, if the dog is

sufficiently reliable.  U.S. v. Cedano-Arellano, 332 F.3d 568, 573 (9th Cir. 2003).

In this case, the canine involved in the search, Yukon, is a certified drug detection

dog, and Yukon and his handler, Trooper Mobley, are a certified scent detection

team. Yukon's reliability is established in the affidavit attached as Exhibit 5.  The

affidavit was provided for a subsequent State of Alaska search warrant for the

vehicle, and has been provided to the Defendant in discovery.

Moreover, as outlined in Section I, the officers in this case had more that the

alert of the drug dog. They had established that the Defendant was driving a rental

vehicle rented by someone else, and was not an authorized driver. Officer Keeler

had observed a number of air fresheners, including two on the driver's side

window. The officers had received information that the Defendant had a history

of drug offenses. Finally, the Defendant claimed employment, but could not

remember his work phone number, bringing his claim into question. However, he

some way of paying for expensive looking jewelry. These factors, when combined

with the alert by Yukon, led the officers to the reasonable conclusion that drugs

would be found inside the vehicle.

It is also important to note that Yukon alerted to the vehicle on the outside,

prior to being let into the vehicle. There is no requirement that the Defendant

consent to a dog sniff outside of the vehicle. Ibarra at 715, citing U.S. v. Place,

462 U.S. 696, 707 (1983). Thus, probable cause was established during the initial

alert by the dog outside of the vehicle. Probable cause was more strongly

established when the dog alerted directly on the center console of the vehicle.

## VII.    CONCLUSION

Officer Keeler made an appropriate traffic stop of the Defendant after

observing the Defendant's failure to stop for a red light. During the initial part of

the stop, the officer learned that the Defendant was a Fairbanks resident, but was

driving a vehicle rented in Fairbanks by a third party, and that the Defendant was

not an authorized operator.  The Officer observed a number of air fresheners in the

vehicle, including two hanging above the driver's side window.  Based upon these

factors, the officer asked whether the Defendant had any criminal history with

drugs.  When he was informed that the Defendant had prior involvement with

drugs, Officer Keeler had reasonable suspicion that the Defendant may be

involved with illegal drugs.  He made the determination that he would call for a

backup officer and ask for the Defendant's consent to search the vehicle.  Before

asking for consent, Officer Keeler also noticed that the Defendant was wearing

expensive looking jewelry, but in response to standard questions related to the

citation, claimed he could not remember his work phone number, casting doubt on

his claim.  This increased Officer Keeler's suspicion.

Based upon this reasonable suspicion, Officer Keeler appropriately used the

most diligent means to confirm or deny his suspicions.  He first asked for consent

to search, and when that was denied, he accepted the Defendant's refusal and

asked for consent to use a less intrusive means, a canine search.  The Defendant

voluntarily provided consent.  The dog arrived promptly, and alerted on the car

from outside the driver's door, and on the center console, providing probable

cause for the search.  That search revealed crack cocaine.

Law enforcement officers must remain vigilant in the course of their normal duties, including traffic stops, for indications and evidence of additional crimes. It would have been "poor police work indeed" for Officer Keeler to not follow up on his suspicions. <u>Terry v. Ohio</u>, 392 U.S. 1, 23 (1968). He did so in a reasonable, limited, and diligent manner.

WHEREFORE plaintiff respectfully requests that the Defendant's Motion to Suppress be denied.

RESPECTFULLY SUBMITTED this <u>12th</u> day of July, 2006, at Fairbanks, Alaska.

<div style="margin-left: 50%;">

DEBORAH M. SMITH
Acting United States Attorney

s/Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov
Bar # 21146

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on July __12__, 2006, that a true and correct copy of the foregoing **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**, was served, via Electronic Filing, on:

**M.J. Haden**

s/Bryan Schroder