NELSON P. COHEN
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov

Attorney for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | Case No. 4:06-cr-00024 (RRB-TWH) |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S SUPPLEMENTAL FILING ON DEFENDANT'S MOTION TO SUPPRESS** |
| vs. | ) | |
| | ) | |
| TEFFIN C. GOSS, II, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Plaintiff, the United States of America, and files the

enclosed supplemental materials in opposition to the Defendant's Motion to

Suppress, Docket 22, the Magistrate Judge's Report and Recommendation, Docket

44, and Defendant's Reply to Objection to Report and Recommendation, Docket

52. The limited detention of the Defendant was reasonable in that it was based upon factors that raised the reasonable suspicions of an experienced law enforcement officer, factors that have been recognize by the courts as significant in the determination of reasonable suspicion.  Moreover, the limited detention was reasonable because the officer narrowly tailored his response and diligently sought the most expedient means to resolve his suspicions.  As recognized by the Magistrate Judge, this diligent, tailored response took only an additional eight minutes.  In addition, the consent provided by the defendant was voluntary because he knew he did not have to consent.  He demonstrated that knowledge by initially limiting his consent to a K-9 search.  Finally, when the K-9 alerted on the outside of the car, the reliability of the dog, later shown by affidavit and at an evidentiary hearing, when combined with the initial factors that led to reasonable suspicion, provided probable cause to search the vehicle under the vehicle exception to the search warrant requirement.

I.      FACTS

A discussion of the facts have been provided in the Government's Opposition to the Defendant's Motion to Suppress, as well as developed in two evidentiary hearings.  The Government will address the facts as needed in the body of the arguments.

II. **THE OFFICER'S LIMITED DELAY OF THE DEFENDANT TO WAIT FOR THE K-9 WAS REASONABLE IN LIGHT OF HIS OBSERVATIONS OF PARTICULARIZED AND OBJECTIVE FACTORS THAT LED TO REASONABLE SUSPICION, AS WELL AS THE OFFICER'S DILIGENT AND TAILORED EFFORTS TO PROMPTLY RESOLVE HIS SUSPICIONS.**

The Magistrate Judge found that the traffic stop of the Defendant was supported by probable cause, and that the period necessary to write the citation for failing to stop at a red light would have appropriately taken 8 minutes. Assuming arguendo that the Magistrate Judge's conclusion on the timing is correct, he found that the period that the defendant was delayed beyond that time was only an additional 8 minutes. The observations and analysis that provided the basis for the Officer's expansion of the traffic stop, as well as his diligent and prompt efforts to resolve his suspicions make that limited period of delay reasonable.

The government believes that the Magistrate Judge may have held Officer Keeler to too high of a standard. On page 19 of the Magistrate Judge's Report and Recommendation he lists a number of factors <u>not</u> observed by Officer Keeler, including actual drugs, "furtive actions," and "overt indications" of "any kind of illegal activity." These observations would not only be supportive of reasonable suspicion, but also for probable cause. Reasonable suspicion is a lower standard, as outlined in the Government's original Opposition to the Motion to Suppress.

Docket 37, pp 5-7.  When held against the appropriate standard, along with the additional arguments outlined immediately below, Officer Keeler had reasonable suspicion for the limited investigative expansion in this case.

All of the factors identified by Officer Keeler have been recognized by the courts as appropriate for a consideration of reasonable suspicion, and two of Officer Keeler's observations have been identified as key factors.  Officer Keeler, as indicated by the Magistrate Judge, identified that the defendant was driving a rental car, was not the renter, and was not listed as an authorized driver.  Thus, there was no indication that he was legally operating the vehicle.  This is a key factor in considering whether there is reasonable suspicion for an expanded inquiry:  [A] defining characteristic of our traffic stop jurisprudence is the defendant's lack of a valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen.  U.S. v. Perez, 37 F.3d 510, 514 (9th Cir, 1994), quoting United States v. Gonzalez-Lerma, 14 F.3d 1479, 1484 (10th Cir. 1994).  Moreover, the Perez court also specifically cites the case of a driver presenting a rental car agreement in another name as an example of a situation where the driver has not properly shown that they can possess and operate the vehicle, an appropriate factor in determining reasonable suspicion.  Id.,

citing <u>U.S. v. Barahona</u>, 990 F.2d 412, 416 (8th Cir. 1993).

    The cases cited by Defendant in his Reply to Objection to Report and Recommendation, Docket 52, are distinguishable on this factor.  In those cases, there was little question (thus suspicion) about whether the operator had authority to be using the vehicle.  In one case, the operator was listed as the renter on the rental agreement, U.S. v. Wood, 106 F.3d 942, 947 (10th Cir. 1997).  In another case, the operator presented a drivers license in his own name, and a registration with the same last name.  He indicated that the vehicle was owned by his brother. <u>U.S. v. Mondragon Farias</u>, 43 F. Supp.2d 1276, 1278-79 (D. Utah 1999).  The court found no objective evidence that the driver was lying about the ownership of the truck.  <u>Id</u>. At 1282.  Without this key factor in common, the case cited by the defendant are of minimal value.

    Another factor in Officer Keeler's determination of reasonable suspicion was the presence of air fresheners, especially multiple air fresheners placed strategically near the doors.  Air fresheners have been identified by law enforcement officers as used to mask the smell of drugs.  This recognition has been accepted by the courts as an important factor for determining reasonable suspicion.  <u>U.S. v. Foreman</u>, 369 F.3d 776, 785 (4th Cir. 2004).  The presence of an air freshener in a rental vehicle, which are cleaned regularly, can also add to the

level of suspicion. U.S. v. Foley, 206 F.3d 802, 804-806 (8th Cir. 2004). In a case cited by the defendant, the court recognized that within the 10th Circuit, air fresheners, when combined with other indicia of criminal activity, have repeatedly supported a brief additional inquiry. Mondragon Farias at 1283. Contrary to assertions by the defendant, the courts do not seem to make any significant distinction between solid air fresheners hung within the car, and sprayed air fresheners.

Radar detectors, like Officer Keeler observed in the defendant's vehicle, are also a factor the officer can consider in determining reasonable suspicion. U.S. v. White, 42 F.3d 457, 460 (8th Cir. 1994). While possession of a legal item like a radar detector is unlikely to provide reasonable suspicion on its own, when viewed with other factors by a trained and experienced law enforcement officer, it can add to the level of reasonable suspicion. U.S. v. Wisniewski, 358 F. Supp.2d 1074, 1091-1092 (D. Utah 2005).

Contrary to concerns by the Magistrate Judge in his Report & Recommendation, the record indicates that Officer Keeler did explain the basis for the final factor he considered in determining reasonable suspicion, that while the defendant did not know the phone number of his supposed employer, he wore an expensive-appearing watch indicative of some income. Officer Keeler provided

the following testimony at the evidentiary hearing on July 17, 2006:

> Q: All right. Did – now, did any of the information that he provided while you were asking those questions, any of that pique your interest?
>
> A; Yes.
>
> Q; And what was that?
>
> A: When I asked for his work phone number, he wasn't able to – he told me he didn't know what it was.
>
> Q: And did he indicate that he was employed?
>
> A: He told me that he worked for the Toyota dealership, Auto Service company, I think it's called.
>
> Q: So why did it pique your interest that he didn't know his work phone number?
>
> A: I – I find it odd that someone doesn't know the number to their work.
>
> Q: Okay. Did you notice anything about his person once he was out of the car that was of interest to you?
>
> A: Yes, I didn't believe he that was working, just because he didn't have a phone number and he was – he had what appeared to me was

expensive jewelry he was wearing.

Q: Okay. Now, this – and did you – so you tied those few things together --

A: Yes

Transcript of Evidentiary Hearing, Docket 43, pp. 1-21 to 1-22.

Such perceived inconsistencies observed by the law enforcement officer appropriately contribute to their determination of reasonable suspicion. Perez at 514.

These factors, when viewed together as part of the totality of the circumstances, provided Officer Keeler with reasonable suspicion to do a limited expansion of the traffic stop. His response was reasonable and diligent in that he pursued the most prompt method of resolving his suspicions; he asked for a consent search. When the defendant declined, he pursued the next most timely way of resolving his suspicions, a K-9 search. Contrary to concerns of the Magistrate Judge that Officer Keeler may have used the defendant's refusal to consent as part of his basis for probable cause, there is nothing in the record to support that concern. Officer Keeler simply moved from one means of resolving his suspicions to another. There was no "delay unnecessary to the legitimate investigation of the law enforcement officer." U.S. v. Sharpe, 470 U.S. 654, 687

(1985). In fact, as recognized by the Court in Sharpe, Officer Keeler's detention was the result of a "graduate[d] ... respons[e] to the demands of [the ] particular situation. Id., quoting U.S. v. Place, 462 U.S. 696, 709 (1983). The factors observed by Officer Keeler provided reasonable suspicion for the limited, diligent expansion of the traffic stop. A response that only required eight minutes.

III.   THE DEFENDANT'S CONSENT TO ALLOW A SEARCH OF THE VEHICLE WAS VOLUNTARY AND VALID

The Magistrate Judge indicates that the Defendant did not voluntarily consent to a search of his vehicle because he wanted to go home, and he was improperly faced with the choice of providing consent or being forced to stay. Officer Keeler made no attempt to directly and improperly coerce the Defendant, and the situation, where no guns were drawn and no one was handcuffed and placed in a police car, was not inherently coercive.

The exchange where Officer Keeler explained to the Defendant that he could go home if he consented was initiated by the Defendant. The Defendant indicated that he would do "what it takes for me to go home, whatever it takes, I'll just (indiscernible) home." Only then did Officer Keeler again give him the option to consent to a search. There was no undue pressure.

The Magistrate Judge also cites and quotes extensively from U.S. v.

Washington, 387 F.3d 1060 (9th Cir. 2004) for the proposition that the Defendant's consent in this case was not voluntary. The facts in Washington are distinguishable. The court in Washington made the point that if a defendant's original verbal consent was not voluntary, having the defendant sign a written consent agreement that indicates that consent is not required does not salvage the involuntary consent. Id. At 1074. The key to this analysis is whether the defendant understood that they did not have to consent. If they have that understanding, and there is no overt or inherent coercion, the consent should be deemed voluntary. The court in Washington found that signing a subsequent written agreement did not make clear that the defendant gained the understanding of his ability to refuse. The court suggested that an appearance before a magistrate or meeting with an attorney may suffice. Id. In the instant case, we know the Defendant was aware of his right to refuse because he exercised that right. There are few better ways to determine whether the defendant understands a right than to have him exercise it, with an explanation of his understanding. In this case, he initially refused to consent to Officer Keeler, and explained why he knew he had that right, from a previous experience. The Defendant clearly knew he had the right to refuse consent, so any subsequent consent was voluntary.

Moreover, Washington is distinguishable because the court in that case

found that the conduct of the officers rose to a level of bad faith that called for suppression. The Washington court found that the officers, while knowing they did not have probable cause, repeatedly attempted to gain access to the defendant's room in violation of his Fourth Amendment rights. Also, the court found that the officers threatened to arrest the defendant in attempt to coerce a consent search. Id. In the instant case the evidence shows that Officer Keeler believed he had reasonable suspicion to request a consent search, and then to order a K-9 search. There is no indication that Officer Keeler's conduct is similar to that of the officers in Washington.

IV.  **AFTER THE DOG ALERTED ON THE VEHICLE, COMBINED WITH THE INFORMATION ALREADY DEVELOPED DURING THE TRAFFIC STOP, THE OFFICERS HAD PROBABLY CAUSE TO SEARCH THE VEHICLE**.

Finally, probable cause can be established solely by a canine alert, if the dog is sufficiently reliable. U.S. v. Cedano-Arellano, 332 F.3d 568, 573 (9th Cir. 2003). In this case, the canine involved in the search, Yukon, is a certified drug detection dog, and Yukon and his handler, Trooper Mobley, are a certified scent detection team. Yukon's reliability was established by affidavit and during testimony at the second evidentiary hearing.

Moreover, as outlined in Section II, the officers in this case had more that

the alert of the drug dog. They had established that the Defendant was driving a rental vehicle rented by someone else, and was not an authorized driver. Officer Keeler had observed a number of air fresheners, including two on the driver's side window. The officers had received information that the Defendant had a history of drug offenses. Finally, the Defendant claimed employment, but could not remember his work phone number, bringing his claim into question. However, he some way of paying for expensive looking jewelry. These factors, when combined with the alert by Yukon, led the officers to the reasonable conclusion that drugs would be found inside the vehicle.

It is also important to note that Yukon alerted to the vehicle on the outside, prior to being let into the vehicle. There is no requirement that the Defendant consent to a dog sniff outside of the vehicle. Ibarra at 715, citing U.S. v. Place, 462 U.S. 696, 707 (1983). Thus, probable cause was established during the initial alert by the dog outside of the vehicle. Probable cause was more strongly established when the dog alerted directly on the center console of the vehicle.

V.   CONCLUSION

Law enforcement officers must remain vigilant in the course of their normal duties, including traffic stops, for indications and evidence of additional crimes. It would have been "poor police work indeed" for Officer Keeler to not follow up on

his suspicions. <u>Terry v. Ohio</u>, 392 U.S. 1, 23 (1968). He did so in a reasonable, limited, and diligent manner.

WHEREFORE plaintiff respectfully requests that the Defendant's Motion to Suppress be denied.

RESPECTFULLY SUBMITTED this <u>11th</u> day of August, 2006, at Fairbanks, Alaska.

> NELSON P. COHEN
> United States Attorney
>
> <u>s/Bryan Schroder</u>
> BRYAN SCHRODER
> Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 101 12th Avenue, Room 310
> Fairbanks, Alaska  99701
> Phone: (907) 456-0245
> Fax: (907) 456-0577
> Email: <u>bryan.schroder@usdoj.gov</u>
> WA Bar # 21146

**CERTIFICATE OF SERVICE**

I hereby certify that on September <u>  11  </u>, 2006, that a true and correct copy of the foregoing, **GOVERNMENT'S SUPPLEMENTAL FILING ON DEFENDANT'S MOTION TO SUPPRESS**, was served, via Electronic Filing, on:

M.J. Haden

<u>s/Bryan Schroder                          </u>