M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TEFFIN C. GOSS, II,<br><br>                    Defendant. | Case No. 4:06-cr-0024-RRB-TWH<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL FILING REGARDING MOTION TO SUPPRESS** |

Defendant, Teffin C. Goss, II, by and through counsel M. J. Haden, Staff

Attorney, hereby files the following response to the government's supplemental filing

regarding his motion to suppress.

I.    The Magistrate Judge Has Carefully Considered All the Facts of this Case and Correctly Found That the Officer Had No Reasonable Suspicion to Support the Prolonged Detention.

Reasonable suspicion consists of "specific articulable facts which, together

with objective and reasonable inferences, form the basis for suspecting that the particular

person detained is engaged in criminal activity.  United States v. Rodriguez, 967 F.2d 592,

594 (9th Cir. 1992), amended by 997 F.2d 1306 (9th Cir. 1993).  Reasonable suspicion may

not be "based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." United States v. Rodriquez-Sanchez, 23 F.3d 1488, 1492 (9th Cir. 1994), overruled in part on other grounds by United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir.), cert. denied, 531 U.S. 889 (2000).  While an officer should consider all of his observances in light of his experience, "experience may not be used to give the officers unbridled discretion in making a stop." Nicacio v. United States INS, 797 F.2d 700, 705 (9th Cir. 1985), overruled in part on other grounds by Hodgers-Durgin v. De la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc).  An investigatory stop must be based on facts, not the mere subjective impression of a particular officer." United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir. 1989), and the inferences drawn by the officer must be objective and reasonable, United States v. Cortez, 449 U.S. 411, 418 (1981).

Here, the government relies on several factors in support of the necessary reasonable suspicion needed to prolong the traffic stop.  First the government contends that the presence of air freshener in a rental vehicle is indicative of drug trafficking because drug traffickers use air fresheners to mask the odor of narcotics and air fresheners are not needed in rental cars because they are cleaned often.  However, in this instance, there is no evidence to indicated how long the rental car had been rented.  Drivers of rental cars may use air fresheners for a number of reasons.  First comes to mind that a renter might want to cover up the smell of cigarette smoke in order to avoid an additional fine for smoking in the vehicle.  In this particular instance, there were two puppies in the car.  The air fresheners would certainly be useful in freshening up any smells that might be left behind by young dogs.  But what should be noted by the court is that Officer Keeler

testified that he detected no odor coming from the air fresheners; thus, his theory that the air fresheners were being used to mask the smell of narcotics is diminished if the air fresheners were not emitting any odor.

Next the government relies on the blanket allegation that drug traffickers drive rental cars.  Keeler offers no further explanation of this assumption.  He does stated that drug traffickers are known to transport drugs between Anchorage and Fairbanks in rental cars; however, in this case there was no evidence that Mr. Goss was traveling between Fairbanks and Anchorage.  There is no evidence to support Keeler's assumption that simply because an individual is driving a rental car rented in his home town that he must be up to criminal activity.

In its supplemental pleading, the government for the first time claims that reasonable suspicion may rest on the fact that Mr. Goss was not named in the rental agreement, therefore, Keeler had the right to further detain him to investigate whether he was authorized to operate the vehicle or whether the vehicle was stolen.  This factor is simply not supported by the record.  There was no testimony offered to ever suggest that the prolonging of the traffic stop was based on any indication that the car might have been stolen.  All evidence points to the fact that the only reason that Keeler continued to detain Mr. Goss was because he believed that there were drugs in the car.  He never once said or did anything to suggest that he was concerned about the ownership or control of the vehicle.  This argument is an after-the-fact justification that is not supported by the record and therefore may not be used as a factor to consider in assessing whether reasonable suspicion exists to justify the prolonged detention.

Mr. Goss finds it suspicious that the government has never introduced into evidence the actual document that Keeler received from Mr. Goss concerning the vehicle rental. There is no evidence as to exactly what that document contained. Was there a provision that listed additional drivers? Would that have been contained on a supplemental document? Exactly what did Keeler observe? Keeler testified that he discovered that Goss was not the renter of the car prior to ordering him out of the vehicle and conducting a pat down search. But, his taped dialog with Goss suggests otherwise. First, after learning that Mr. Goss was employed by Toyota, Keeler asks if that is where <u>he</u> (Goss) is renting is car from. Traffic Stop Transcript p. 4. When Mr. Goss tells him no, it's a Dollar rental car, Keeler accepts his answer. Then later when Mr. Goss tells him that it is not his rental car, Keeler asks whose rental car it is. In fact, he asks twice. Traffic Stop Transcript p. 5. This line of questions would suggest that Keeler had not reviewed any rental agreement, but simply knew that the vehicle was a rental.

Finally, the government relies on Mr. Goss's failure to recite his work phone number and his alleged expensive jewelry as justification to suspect that the vehicle contained drugs.[1] These assumptions on the part of Officer Keeler are mere hunches and lack any objective or legitimate support.

---

[1] Mr. Goss contends that these factors should not even be considered in the reasonable suspicion calculation because the traffic stop became prolonged when Keeler called for backup to assist in the search of the vehicle as his focus changed from merely issuing a ticket for running the red light to a drug investigation. At the very least, the stop was prolonged when Keeler order Mr. Goss out of the vehicle and conducted a pat down search of his person – a practice not normally done during the issuance of a simple traffic citation.

The Magistrate Judge has carefully considered all these factors.  Taken as a whole, they do not amount to the reasonable suspicion necessary to prolong the traffic stop; thus, the evidence found as a result must be suppressed.

II.    Mr. Goss's Continued Detention Was Not Consensual.

The Magistrate Judge correctly found that Mr. Goss did not consent to waiting for the K-9 unit to arrive.  No Fourth Amendment seizure or detention occurs if an encounter between an officer and a driver ceases to be a detention and becomes consensual.  A traffic stop may become a consensual encounter requiring no reasonable suspicion if an officer returns the license and registration of the driver and asks questions without further constraining the driver by an overbearing show of authority.  Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter and proceed on his or her own way.  Here, it is clear that Mr. Goss did not believe that he would have been free to leave.  In fact, he was told by Keeler that the only way he could leave was to submit to a search of his car.

Mr. Goss's consent was not voluntary because Keeler's statements regarding the K-9 unit implied that the dog was going to be called regardless of whether Mr. Goss consented or not.  See 3 Wayne R. LaFave, Search and Seizure – A Treatise on the Fourth Amendment § 8.2(a) at 642 (1996) (when the police state that they "want" to undertake some activity, agreement to such an imperative statement is often seen as submission of a claim of authority).  Mere acquiescence to lawful authority is insufficient. United States v. Spires, 3 F.3d 1234, 1237 (9th Cir. 1993).  Some of the factors to be weighed include:  (1) whether the person was in custody; (2) whether the agents had their

guns drawn; (3) whether <u>Miranda</u> warnings were given; (4) whether the defendant was told that he had the right not to consent; (5) whether he was told a search warrant could be obtained; and (6) the defendant's belief as to the likelihood that contraband will be discovered.   <u>Id.</u>  Other factors to be considered in determining consent include the defendant's age, education, and intelligence.  <u>Schneckloth v. Bastamonte</u>, 412 U.S. 218, 226 (1973); <u>United States v. Castillo</u>, 866 F.2d 1071, 1082 (9th Cir. 1988).  Here, Mr. Goss was being detained by at least two officers.  The officers were visibly armed.  Keeler had possession of his driver's license.  He had been ordered out of the vehicle and subjected to a pat down search.  He was ordered to remove items from his pockets.  Despite the fact that he had on shorts and a short sleeve shirt, he was made to stand outside in the cold with snow still on the ground.  Although he was certainly not free to leave, he was never advised of his <u>Miranda</u> rights.  In addition, Keeler threatened that once the dog alerted, he would get a warrant and search the vehicle.  Objectively reasonable police officers would not interpret Mr. Goss's reply of "if that's what it takes for me to go home, whatever it takes, I'll just let (indiscernible) home" as voluntary consent to being subjected to a K-9 search. Mr. Goss's reply is equivocal at best.  "[T]he government 'must show that there was no duress or coercion, express or implied' and that the consent was '<u>unequivocal and specific</u>' and 'freely and intelligently given.'"  <u>United States v. Reid,</u> 226 F.3d 1020, 1026 (9th Cir 2000), <u>quoting</u> <u>United States v. Shaibu</u>, 920 F.2d at 1426 (emphasis added).  The government has not carried its heavy burden of establishing that any consent was knowingly and voluntarily given.

These factors also come into play with Mr. Goss's alleged consent to Mobley to enter the vehicle.  Prior to Mobley's arrival, Mr. Goss had refused to allow the officers

6

to enter his vehicle on at least three occasions.  Rather than heed Keeler's advice and

allow him to look inside the car, Mr. Goss chose to wait in the cold.  He again stated that

he did not want to open the doors of his car.  Traffic Stop Transcript p. 14.  Mobley's claim

that after all that, Goss simply changed his mind and gave consent defies reason.  Further,

Mobley was unable to testify exactly what he had stated to Goss other than asking him if

he could "search."  Clearly, Goss did not understand the extent of the "search" because

he stated to Keeler as the dog sniff began that "[Mobley] never explained to me how this

usually goes."  Traffic Stop Transcript p. 16.  Based on the facts leading up to Goss's

interaction with Mobley and Mobley's inability to relay the specifics of his request to search

as well as Goss's reply, the court must find that there was no valid consent allowing the

officers to enter the vehicle.

III.    <u>The Government Has Failed to Prove That the Taint of the Prior Constitution
        Violation of the Prolonged Detention Has Been Purged, Thus the Evidence must Be
        Suppressed</u>.

        The law is clear.  "Under the Fourth Amendment . . . evidence obtained

subsequent to an illegal investigation is tainted by the illegality and thus inadmissible,

notwithstanding . . . consent, unless subsequent events have purged the taint.'" <u>United

States Bautista</u>, 362 F.3d 585, 592 (9th Cir. 2004) (<u>quoting United States v. Chavez-

Valenzuela</u>, 268 F.3d 719 727 (9th Cir. 2001), <u>amended by</u>, 279 F.3d 1061 (2002) (holding

that consent was tainted and the evidence obtained pursuant to it should have been

suppressed) <u>see also United States v. Hotal</u>, 143 F.3d 1223, 1228 (9th Cir. 1998) (consent

to search that is given after an illegal entry is tainted and invalid under the Fourth

Amendment).  Under established law, "evidence obtained through the "exploitation" of

illegal behavior by the police cannot be admitted into evidence . . . [O]nce an illegality has

been shown, we must decide whether the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishably to be purged of the primary taint." United States v. Crawford, 372 F.3d 1048, 1092 (9th Cir. 2004) (en banc) (W. Fletcher, J., dissenting) (quoting Brown, 422 U.S. at 559). The test for determining whether the primary taint of a prior constitutional violation has been purged is commonly referred to as "attenuation analysis."

Additional questioning by an officer during a traffic stop is acceptable in two situations only – either the officer must have an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring or the initial detention has become a consensual encounter. Here, Keeler's actions fail to comply with this long settled standard. A detention that lacks reasonable suspicion ceases to support a conclusion that the contact is voluntary; "evidence obtained subsequent to an illegal investigation is tainted by the illegality and thus inadmissible, not withstanding the suspect's consent, unless subsequent events have purged the taint." United States v. Chavez-Valenzuela, 268 F.3d 719, 727 (9th Cir. 2001); also see United States v. Colin, 314 F.3d 439, 446-47 (9th Cir. 2002) (taint of illegal stop not purged when consent occurs during illegal stop).

The taint issue was easily decided in Chavez-Valenzuela and it is the same here. Temporal proximity between the violation and the alleged consent is identical. There are no intervening circumstances. The officer's actions of intentionally delaying the issuing of the ticket to conduct an investigation is irrelevant to the legal basis for the stop was purposeful. Clear, longstanding legal precedent requires that the evidence be suppressed.

IV.    <u>Warrantless Entry into the Vehicle Was in Violation of the Fourth Amendment</u>.

A canine sniff alone can supply the probable cause for issuing a search warrant <u>if</u> the application for the warrant establishes the dog's reliability.  <u>United States v. Lingenfelter</u> 997 F.2d 632 (9th Cir. 1993).  Here, the government argues that because Mobley knew the dog's record and because this court, some four month after the fact, has reviewed the dog's record, there was probable cause to enter into the vehicle following the dogs alert.  This theory skirts the requirement that a neutral and detached magistrate must determine if the dog meets the requisite reliability for the issue of a search warrant, not the police officer or a reviewing court after the fact.  The government relies on <u>United States v. Cedano-Arellano</u>, 332 F.3d 568 (9th Cir. 2003).  However, <u>Cedano-Arellano</u> has to do with an arrest, not a search, at the boarder where different standards apply.  Here, it was necessary for a magistrate to access the reliability of the K-9 before probable cause could be determined – just as the officers did following Mr. Goss's arrest.  Thus, the warrantless search of the interior of the vehicle was in violation of the Fourth Amendment.

V.    <u>Collusion</u>.

The magistrate judge's recommendation is well grounded in established law. The court has considered all the evidence and made a correct finding.    The recommendation of the court should stand.

///

///

///

///

DATED this 14th day of September, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Alaska Bar No. 0607047
601 West Fifth Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org


Certification:


I certify that on September 14, 2006, a copy of the
foregoing document, with attachments, was
served electronically on:


Bryan Schroder, Esq.


/s/ M. J. Haden