NELSON P. COHEN
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone:  (907) 456-0245
Fax: (907) 456-0577
E-mail: bryan.schroder@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                      )<br>                         Plaintiff,   )<br>                                                      )<br>             v.                                   )<br>                                                      )<br>  Teffin Goss II,                              )<br>                                                      )<br>                        Defendant.  )<br>_____) | No. 4:06-cr-00024-JWS<br><br>**GOVERNMENT'S TRIAL**<br>**MEMORANDUM** |

## I.      INTRODUCTION

     The Defendant is charged with one count of possession of cocaine with intent to distribute.  The Government's case in chief should take no longer than two days.

II.   **STATEMENT OF THE CASE**

  A.   **Case Summary**

On April 15, 2006, at approximately 11:10 pm, Officer Keeler of the University of Alaska Fairbanks (UAF) Police, observed a late model Toyota Camry fail to stop for a red light at the corner of Geist Road and Fairbanks Street in Fairbanks, Alaska. Officer Keeler conducted a traffic stop of the vehicle along Geist Road. When Officer Keeler approached the drivers side of the Camry, the driver was using his cell phone. The man claimed that he was busy talking on his cell phone when he saw the light turn red. Officer Keeler asked the driver for his operators license, as well as the registration and insurance information for the vehicle. The officer then instructed the driver to pull into the adjacent Pizza Hut parking lot.

The operators license identified the driver as the Defendant, Teffin Goss II, with a Fairbanks address. Instead of registration and insurance information, the Defendant produced a rental agreement from Avis Rental Cars. The agreement indicated that the car was rented in Fairbanks in the name of Jennifer Silva. While at the passenger side of the vehicle, the officer also noted multiple air fresheners hanging from both the drivers door and the rear view mirror. Officers

would later find 7 total air fresheners in the Camry. The vehicle also had a radar detector, often used to avoid contact with law enforcement officers.

During the move into the adjacent parking lot, the officer asked the UAF Police dispatcher to check the Defendant's operators license information in the Alaska Public Safety Information Network (ASPIN). The officer also asked the dispatcher to check whether the Defendant had any criminal history involving drugs. The dispatcher informed the officer that the Defendant had a drug history, and Officer Keeler called for back-up. The officer continued to review the Defendant's operator's license and the rental agreement, checking facts with the dispatcher. Once the back-up officer arrived, Officer Keeler continued gathering the information necessary to issue a traffic citation for failure to stop at the red light.

When the Defendant stepped out of the Camry, Officer Keeler noticed that he was wearing an expensive-looking watch and necklaces. This observation became more significant when, as part of the standard questions asked for the citation, the Defendant claimed he worked for Toyota Auto Services, but could not remember the work phone number.

Officer Keeler then asked the Defendant for permission to search the Camry. The Defendant refused, citing a previous instance where he consented to

the search of a vehicle, and was subsequently jailed for possession of a weapon that was found inside. The officers complied with the Defendant's decision not to consent to the search, but asked if a canine could perform a narcotics sniff of the vehicle. The Defendant consented.

Trooper Mobley quickly arrived with the drug dog, on scene by 11:25 pm. The canine first alerted on the driver's side door of the Camry, then when Trooper Mobley let the dog into the passenger compartment, the dog strongly alerted on the center console between the front seats. In the center console was a camera bag that contained what appeared to be crack cocaine in a wet form. Trooper Mobley identified the substance as being "freshly cooked." The State of Alaska Scientific Crime Detection Laboratory identified the substance as 24.5 grams of cocaine base.

The officers stopped their search upon discovery of the drugs, and removed the vehicle to the Fairbanks Police Department garage for an additional search. Based upon a State of Alaska search warrant, the officers found numerous documents, including a traffic citation for speeding from the previous day, issued to the Defendant in Palmer.

At the police station Officer Keeler read the Defendant a <u>Miranda</u> warning. The Defendant stated that he borrowed the Camry to get his dogs, and only had

the car for 20 minutes. When asked for the time he borrowed the car, the Defendant asked for an attorney and Officer Keeler stopped the questioning. In a later interview, the person who had rented the vehicle, Jennifer Silva, agreed that she gave the Defendant permission to use the car, but stated that he had the car starting from 7:00 - 8:00 pm that night, and that no one else had borrowed the car. She saw the Defendant briefly at 10:00 pm, and no one was with him.

### B.   Summary of the Charges

Defendant, Teffin Goss II, is charged in the Indictment with one count of possession of cocaine base, or crack cocaine with intent to distribute, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B).

### C.   Witnesses

At trial, the government will call some or all of the following:

1. One or more of the law enforcement officers who were involved in the investigation of this case or who were involved in the search of the Defendant's vehicle, or the arrest of the defendant;

2. A chemist/laboratory technician employed by the Alaska Scientific Crime Detection Laboratory to testify about the nature and weight of the substance found packaged in the Defendant's vehicle;

4. Persons involved in the rental of the vehicle;

5. Chain of custody witnesses;

6. A DEA Agent to provide expert testimony on whether the evidence found in the Defendant's residence, in his bedroom, is consistent with a drug distribution operation.

7. Persons to provide testimony on the Defendant's previous employment.

**D. Exhibits**

The government will offer some or all of the following exhibits at trial:

1. The cocaine base seized from the Defendant's vehicle;

2. Photographs of the Defendant's vehicle taken during the search of the vehicle;

3. Video recording of the traffic stop taken from a camera mounted on Officer Keeler's patrol car;

4. Corresponding audio recording of the traffic stop;

5. Papers found during the search of the vehicle;

6. Video tapes found during the search of the vehicle;

7. Video camera found during the search of the vehicle;

8. Camera case found during the search of the vehicle;

**III. LEGAL/EVIDENTIARY ISSUES**

    **A. Expert Witness Testimony**

**General Standards**

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence. Rule 703, Fed. R. Evid.

The court has broad discretion to determine whether to admit expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government will give written notice to the defendant of its intention to elicit expert opinion testimony from a Chemist from the Alaska Crime Detection Laboratory to identify the substance found in the Defendant's vehicle, and a DEA agent to testify about drug distribution operations.

**B. Limits of Relevant Defenses**

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908. The trial court has broad discretion in determining admissibility

under Rule 403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes.  See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991).  Thus, because a defendant has no right to seek nullification, he has no right to present evidence

relevant only to such a defense. See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

While the defendant obviously has a right to present relevant defenses to the charges, he has no right to seek jury nullification and thus no right to introduce evidence which would be relevant only to nullification. This includes any reference to the potential penalties which the defendant faces as a result of conviction. It is inappropriate for the jury to consider, or even be informed of the consequences of their verdict. U.S. v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

### C. Admissible Evidence

The search of the Defendant's vehicle on April 15, 2006 has been the subject of extensive litigation in this case. The court has ruled that the discovery of cocaine base in the Defendant's vehicle was based upon an appropriate search. It is essential to establish the proper intentions of the law enforcement officers who searched the defendant's residence. Therefore, the government intends to establish the factors that led to the officers search of the Defendant's vehicle on April 15, 2006.

The Supreme Court has recognized the Government's need to present a reasonable picture of the events to the jury:

> Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

Old Chief v. United States, 519 U.S. 172, 188 (1997).

### D.  Federal Rule of Evidence 404(b)

The Government will file a separate motion in limine regarding Rule 404(b) evidence.

RESPECTFULLY SUBMITTED this _3rd__ day of October, 2006, at Fairbanks, Alaska.

NELSON P. COHEN
United States Attorney

s/Bryan Schroder
Assistant U.S. Attorney
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone:  (907) 456-0245
Fax: (907) 456-0577
E-mail:Bryan.Schroder@usdoj.gov
WA# 21146

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2006,
a copy of the foregoing **GOVERNMENT'S TRIAL MEMORANDUM**,
was served, via electronic filing, on:

M.J. Haden

s/Bryan Schroder